FILED

MAY 1 4 2008

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| AMERIPRISE FINANCIAL SERVICES, INC.<br><br>Plaintiff,<br><br>vs.<br><br>DONNA QUAM,<br><br>Defendant. | ) | Civil No.: 08 C 50081 |

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION**
**TO PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF**

Defendant Donna Quam ("Quam" or "Defendant") respectfully submits this Memorandum of Law in opposition to the motion of plaintiff Ameriprise Financial Services, Inc. ("Ameriprise" or "Plaintiff") for a preliminary injunction precluding her from providing financial services to her customers and devastating her ability to support herself and her two daughters.[1] Plaintiff's motion should be denied and this proceeding stayed in favor of expedited arbitration before the Financial Industry Regulatory Authority ("FINRA") Dispute Resolution.[2]

**Preliminary Statement**

Quam is a financial advisor, who formerly was an Ameriprise franchisee. As a "franchisee," Quam's relationship with Ameriprise was different than the traditional financial advisor-brokerage firm relationship. Quam developed her clients on her own and at her own financial expense. Specifically, Quam rented her own office space and paid all of her office and

1 Defendant relies on the Affidavit of Donna Quam sworn to May 13, 2008 (the "Quam Aff.") and the Declaration of Willard Knox, dated May 13, 2008 (the "Knox Dec.").

2 In July 2007, the National Association of Securities Dealers, Inc. (the "NASD") was consolidated with the member regulation, enforcement and arbitration functions of the New York Stock Exchange, Inc. (the "NYSE") to form the Financial Industry Regulatory Authority ("FINRA").

operating expenses including, inter alia, rent, phone bills, licensing fees and compliance supervision costs. As a "franchisee," Quam had equity in her business which she could later sell. On April 21, 2008, Quam's affiliation with Ameriprise was terminated by Ameriprise. Soon thereafter Quam became affiliated with Brewer Investment Group, LLC.

The overwhelming authority developed in scores of virtually identical disputes brought by brokerage houses against former financial advisors demonstrates that:

(a) Plaintiff is not irreparably harmed when financial advisors join a competitor;

(b) Plaintiff is not likely to succeed on the merits of its claims for injunctive relief, which claims have been rejected by an overwhelming majority of the industry arbitration panels that have assessed its contract and tort claims in essentially identical cases;

(c) securities industry arbitration panels have no difficulty assessing (or denying) damages in cases where financial services firms have sought injunctive relief and damages for acts identical to those stated in the Complaint; and

(d) the public interest overwhelmingly is not served by, and the balance of the equities does not support, entry of an injunction that restricts Defendant from soliciting and servicing the public customers who have come to rely upon her in making investment and other financial decisions.

This Court should deny the injunction because the true victims here -- the investing public -- will be artificially separated from their financial advisor of choice should an injunction issue. Defendant's customers who wish to exercise their rights to continue to be served by Defendant should be allowed to do so.

Plaintiff's claim that the "restrictive covenant" in enforceable is simply false. Virtually of all of Defendant's customers were developed by her, at her expense, and without any assistance from Plaintiff. Under the instant facts, Plaintiff's allegation that Defendant's clients are somehow its property has no basis in fact or law. Illinois courts -- and courts throughout the

country -- that have closely examined identical claims to those brought here have rejected applications similar to the instant one. Indeed, attached to the Knox Declaration are several cases brought by Ameriprise's predecessor (American Express Financial Advisors, Inc.) in recent years in which it attempted to seek identical relief as Ameriprise seeks here, and its efforts to devastate former advisors' careers were thwarted. See, e.g., American Express Financial Advisors, Inc. v. Mary R. DeGon and Matthew M. Bruce, Civil Action No. 04-10979-RGS (Dist. Ct. Mass. May 26, 2004) (Knox Dec. Exhibit 1); American Express Financial Advisors, Inc. v. Suzanne Osborne, Civil Action No. 7:01CV00949 (Dist. Ct. W. Dist. Va. Dec. 19, 2001) (Turk, J.) (Knox Dec. Exhibit 2); American Express Financial Advisors, Inc. v. Williams, No. 98-2398C (Mass. Super. Ct. November 10, 1998) (Knox Dec. Exhibit 3); American Express Financial Advisors, Inc. v. O'Brien, No. 95-1249(Mass. Super. Ct. June 23, 1995) (Knox Dec. Exhibit 4); American Express Financial Advisors, Inc., et ano. v. Temm, et al., 241 F. Supp. 2d 30 (D. Me. 2003) (Knox Dec. Exhibit 5); American Express Financial Advisors, Inc. v. Butt, et ano., Case No. 3:03-CV-509-S (D. Ky. Aug. 28, 2003) (Knox Dec. Exhibit 6); American Express Financial Advisors, Inc. v. Botwinick, et al., Civil Action No. 98-4552 (NHP) (D. N.J. Oct. 21, 1998) (Knox Dec. Exhibit 7); American Express Financial Advisors, Inc. v. Conoway, Index No. 8486/98 (N.Y. Sup. Ct. Aug. 18, 1998) (Knox Dec. Exhibit 8); American Express Financial Advisors, Inc. v. Lanpher, Index No. 7578/98 (N.Y. Sup. Ct. July 24, 1998) (Knox Aff., Exhibit 9); American Express Financial Advisors, Inc. v. Welch, Case No. 96-2792 (Fla. Cir. Ct. June 18, 1996) (Knox Dec. Exhibit 10).

As demonstrated below, on the facts disclosed by the record herein, the injunction should be denied and this action should be stayed pending an expedited arbitration before FINRA.

**Factual Background**

The factual background is set forth in the accompanying Quam Affidavit, and will not be repeated herein.

**ARGUMENT**

**Point I**

**PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF SHOULD BE DENIED BECAUSE IT CANNOT SATISFY THE STRINGENT REQUIREMENTS FOR OBTAINING SUCH EXTRAORDINARY RELIEF**

This Court should deny Plaintiff's application for an injunction because Plaintiff cannot overcome the strong presumption against granting such extraordinary relief. To obtain an injunction, Plaintiff must establish (1) a likelihood of irreparable harm; (2) a probability of success on the merits; (3) that the threatened harm to plaintiff outweighs the harm the injunction may inflict on defendant; and (4) that injunctive relief will not harm the public interest. See, e.g., Ferrell v. U.S. Dep't of Housing & Urban Dev., 186 F.3d 805, 811 (7th Cir. 1999); Northern Border Pipeline Co. v. 64.111 Acres of Land, 125 F.Supp.2d 299, 301 (N.D. Ill. 2000). Plaintiff's case does not satisfy any of the requisite elements to entitle it to preliminary injunctive relief.

Illinois law should apply to the instant action, despite the choice-of-law clause to the contrary contained in the Franchise Agreement. Illinois courts have adopted the Restatement (Second) of Conflict of Laws which provides that a choice of law provision in a contract will not govern where either (a) the chosen state has no substantial relationship to the parties or the transaction or (b) the application of the chosen states law would be contrary to a fundamental public policy of the state with the greater interest in the dispute. See International Surplus Lines

Insurance Co. v. Pioneer Life Insurance Co. of Illinois, 209 Ill. App.3d 144, 152, 568 N.E.2d 9, 13-14 (1990). Here, Minnesota has no relationship to the dispute and Minnesota law is contrary to Illinois' careful scrutiny on restraints of trade. Minnesota has no relationship, and certainly not a "substantial" relationship to the parties or the events involved in this dispute. During all relevant times hereto, Defendant has resided and worked in Illinois. None of Defendant's clients were residents of Minnesota. The contract at issue was presented to Defendant, and entered into by Defendant, in Illinois. Simply, there is absolutely no contact between Defendant or the Franchise Agreement and Minnesota. Thus, Illinois law mandates that laws of Illinois apply to this dispute.[3] Secondly, Illinois has chosen to provide its workers with greater protection from the negative effects of restrictive covenants than Minnesota. For example, the "near permanence" test utilized by Illinois courts when analyzing post-employment restrictions is not used in Minnesota.

## A. Plaintiff Cannot Demonstrate That It Will Suffer Irreparable Harm

Ameriprise is not entitled to preliminary injunctive relief because no threat of irreparable harm exists here. Under long standing precedent, Illinois courts have found no

3 This notwithstanding, if Minnesota law did apply to this dispute, the outcome would be the same. Minnesota law considers non-compete agreements to be a restraint on trade and as such non-compete agreements are disfavored. See e.g., IKON Office Solutions, Inc. v. Dale, 170 F.Supp.2d 892, 896 (D. Minn. 2001) ("Restrictive covenants that limit one's right to work and earn a livelihood are generally disfavored by courts since they restrain free trade."); Freeman v. Duluth Clinic, Ltd., 334 N.W.2d 626, 630 (Minn. 1983) (holding that "[t]he mere continuation of employment can be used to uphold coercive agreements, but the covenant must be bargained for and provide the employee with real advantages." 334 N.W.2d at 630. Here, Defendant Quam became affiliated with Ameriprise in 1993. Ameriprise unilaterally changed its relationship with Defendant to that of franchisor-franchisee in 1999, and required Defendant to sign the Franchisee Agreement at issue. Ameriprise now tries to argue that the restrictive covenant it seeks to enforce was "bargained for" by Defendant despite that Defendant was not offered any reasonable alternative had she declined to enter into this new arrangement. Moreover, Defendant continued to build her business on her own, as she had before. As such, even if Minnesota law applied, which it should not, the restrictive covenant would be unenforceable.

irreparable harm where, as here, money damages are calculable. See American Hospital Assoc. v. Harris, 625 F.2d 1328, 1331 (7th Cir. 1980) (threatened injuries must be "peculiar" and not-susceptible to post-determination remedy in order to constitute irreparable harm, and "[m[ere injuries, however substantial, in terms of money, time and energy . . . are not enough."). See also Signode Corp. v. Weld-Loc Systems, Inc., 700 F.2d 1108, 1111 (7th Cir. 1983) ("a defendant's ability to compensate plaintiff in money damages precludes issuance of a preliminary injunction"); Fischer v. Brombolich, 566 N.E.2d 785, 793 (Ill. App. 1991) ("irreparable harm occurs only where monetary damages cannot adequately compensate the injury or where the injury cannot be measured by pecuniary standards.").

Any potential injury suffered by Plaintiff due to any actions allegedly taken by Defendant will be easily compensable by an award of money damages. Every dollar earned by Defendant doing business with those customers Plaintiff considers its own can be traced precisely. Any future business Plaintiff might have earned as a result of Defendant's work is knowable to the penny. Hence, injunctive relief is not permissible.

The United States Supreme Court has repeatedly held that where money damages provide an adequate remedy, irreparable harm cannot be found:

> [I]t seems clear that the temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury .... `The key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.' (emphasis in original).

Sampson v. Murray, 415 U.S. 61, 90 (1964) (quoting Virginia Petroleum Jobbers Ass'n v. FPC, 259 F.2d 921, 925 (D.C. 1958)).

In Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bishop, 839 F. Supp. 68 (D. Me. 1993), Chief Judge Carter rejected identical claims of irreparable harm, noting that "the best reasoned cases have clearly held that the difficulty of determining the amount of such an award does not impugn the adequacy of the damages remedy at law." Id. at 74. (Emphasis added.) Here, as in Bishop, Ameriprise has:

> rather precise figures as to how many accounts Defendant was exposed to during his employment, the amount of assets represented by these accounts, and the precise dollar amounts of commissions generated annually by these accounts. These figures, at the least, set out discernible parameters for discovery as to the extent of damage incurred by Merrill Lynch on account of Defendant's alleged misconduct.

839 F. Supp. at 74 n.5.

## B. Plaintiff Cannot Demonstrate A Likelihood Of Success On The Merits

Plaintiff cannot prevail on the merits because the restrictive covenant at issue is unenforceable under Illinois law. It is well established under Illinois law that restrictive covenants are disfavored and carefully scrutinized to ensure that they are reasonable, protect a legitimate business interest of the company, and are not contrary to public interest. See e.g., Lifetec, Inc. v. Edwards, 377 Ill. App. 3d 260, 269, 880 N.E.2d 188, 196 (Ill. App. 4th Dist. 2007).

Plaintiff's request for an injunction will ultimately be decided, not by a court, but rather in expedited fashion by securities industry arbitrators following well-established industry-specific principles of arbitral decision. See, e.g. American Express Financial Advisors, Inc. v. Degon and Bruce, Docket No. 04-10979-RGS (D.C. Mass. May 26, 2004) (denying injunctive relief holding that "given American Express's right to expedited arbitration before a panel of the National Association of Securities Dealers (NASD) (which it has already requested), and the

uniquely monetary nature of the damages, if any, that American Express might incur in the interim, the requisite showing of irreparable harm has not been made.") (Knox Dec. Exhibit 1).

**1. Arbitrators Overwhelmingly Deny Requests for Permanent Injunctive Relief**

It is common knowledge that securities industry arbitrators almost universally refuse to issue injunctions such as Plaintiff seeks here.

In American Express Financial Advisors, Inc. v. Suzanne Osborne, NASD No. 01-06713 (Knox Dec. Exhibit 15), the panel denied AEFA's demand for injunctive relief and awarded the respondent financial advisor $100,000 in damages against AEFA for tortiously interfering with her relationship with her clients, and ordered AEFA to pay all forum fees associated with the hearings. In American Express Financial Advisors, Inc. v. VonLange (NASD May 15, 1998) (Knox Dec. Exhibit 16), a single arbitrator rejected every attempt by American Express to restrict its former brokers from working with their clients and using documents concerning their clients. The panels in these and in scores of other similar proceedings demonstrate that there is neither irreparable harm nor a likelihood of success on the merits after a full hearing before the arbitrators.

**2. Plaintiff Is Unlikely To Succeed In Its Attempts To Prevent Defendant From Continuing To Do Business With Her Clients**

Plaintiff alleges that Defendant breached the Franchise Agreement by communicating with her clients allegedly in violation of the restrictive covenant. The restrictive covenant at issue is unenforceable under Illinois law because virtually each and every client at issue was developed by Defendant, through her own hard work and at her own financial expense, with no assistance whatsoever from Ameriprise. Thus, pursuant to longstanding precedent in

Illinois, Ameriprise cannot restrict Defendant's right to communicate with her clients or to continue to service their accounts.

Restrictive covenants in employment agreements are deemed a "restraint of trade" and therefore are scrutinized carefully to ensure that they not "prevent competition per se." Lifetec, Inc. v. Edwards, 377 Ill. App. 3d 260, 259, 800 N.E.2d 188, 185 (4th Dist. 2007). Illinois courts utilize the "near permanent" test to determine whether employers have a protectable interest in their customer lists. Illinois does not recognize a proprietary right in customers. See Jackson v. Hammer, 274 Ill.App.3d at 66, 653 N.E.2d at 814, 210 Ill. Dec. at 619 (Ill.App. 1995) ("customers are not property"); see also Rapp Insurance Agency, Inc. v. Baldree, 231 Ill.App.3d 1038, 1042, 597 N.E.2d 936, 939, 173 Ill. Dec. 962, 965 (Ill.App. 1992). Illinois law grants employers a limited "protectable interest in its customers, where by the nature of the business, the employer has a near-permanent relationship, and but for the employment, the employees would not have contact with the customers." Curtis 1000, Inc. v. Seuss, 843 F. Supp. at 450 (C.D. Ill. 1994).

The "near permanence" test consists of several factors that a court may examine to determine whether a business has a protectable interest in its customer lists. They include

> (1) the number of years required to develop the clientele; (2) the amount of money invested to acquire clients; (3) the degree of difficulty in acquiring clients; (4) the extent to personal customer contact by the employee; (5) the extent of the employer's knowledge of its clients; (6) the duration of the customers' association with the employer; (7) the continuity of employer-customer relationships.

Office Mates 5, 234 Ill.App.3d at 572, 599 N.E.2d at 1082, 175 Ill. Dec. at 68; See also Springfield Rare Coin Galleries, 250 Ill.App.3d at 935, 620 N.E.2d at 488, 189 Ill. Dec. at 520 (Ill.App. 1993); Curtis 1000, 843 F. Supp. at 450 (C.D. Ill. 1994).

As to the first factor, Ameriprise does not mention the years its former financial advisor (and independent contractor) spent in cultivating prospective clients through her active community involvement, financial seminars (paid for her at her own expense), and her natural market of family and friends, who then opened accounts with her. As to the second factor, Ameriprise does not establish that it expended substantial sums of money to develop these clients. Indeed, the undisputable facts are that Quam developed her clients at her own financial expense – she paid for, inter alia, her office rent, phones, licensing and compliance supervision. As to the third factor, Ameriprise has submitted no evidence concerning the difficulty acquiring clients. As to the fourth factor, Defendant has close personal relationships with many of her clients. As to the fifth factor, Ameriprise has demonstrated no knowledge concerning its alleged clients. As to the sixth factor, most brokerage clients only maintain their accounts with a brokerage firm only so long as their broker stays there. Finally, Ameriprise has not established any continuity of relationship but for Defendant's relationship with these clients.

Here, Ameriprise cannot establish that it is entitled to any injunctive relief. In this case, Ameriprise seeks to restrict Defendant from doing business not with customers with whom Amerirpise had a special or longstanding relationship with, or even customers which were contacted by the Defendant using confidential Ameriprise information (indeed there is no allegation that Defendant took information with her upon her termination). Rather, the customers at issue were personally developed by Defendant and were personally serviced by Defendant without any assistance from Ameriprise – with the sole exception of approximately 14 clients assigned to Defendant from other Ameriprise advisors, none of whom Defendant has, or will, service.

The practice in the industry also indicates that Ameriprise does not have a protectable interest in the customer relationships at issue. The undisputed record shows that all brokerage firms recruit from each other and encourage their newly-hired brokers to solicit customers they formerly serviced. In such circumstances, client information can hardly rise to the level of a protectable interest.

**C. Plaintiff Cannot Demonstrate That The Balance of Equities Tips In Its Favor**

If this Court enjoins Defendant from doing business with her clients it will destroy the career that she has worked so hard to build. It will also cripple her financially and her ability to support herself and her two daughters. On the other hand, the most Plaintiff stands to lose is an amount of money that is infinitesimally small relative to its size. Not surprisingly, courts have recognized that brokerage firms can survive the denial of an injunction far more readily than their departing employees could survive its issuance. See Morgan Stanley DW, Inc. v. Frisby, 163 F. Supp. 2d 1371, 1381 (N.D. Ga. 2001) ("As have others, this Court holds that the balance of the equities clearly tips in favor of Defendants and their customers. Brokerage firms can survive the denial of an injunction far more readily than their departing employees can survive its issuance."); Merrill Lynch, Pierce, Fenner & Smith Inc. v. de Liniere, 572 F. Supp. 246, 249 (D.C. Ga. 1983) ("Because the effect of the loss of income pending the outcome of this dispute would, by reason of the differing financial strength of a large brokerage firm and an individual broker, bear far more heavily on Ms. De Liniere than on Merrill Lynch, that disparity of effect supports denial of an injunction.").

If the application for an injunction is denied, Ameriprise may still compete, through its other brokers, for all of the customers formerly serviced by Defendant. Ameriprise has more than enough resources and employees to accomplish this task, and has in its possession

all customer account statements and account information needed to entice these customers to remain. By contrast, an injunction would have a devastating effect on Defendant's livelihood. Accordingly, the balance of hardships mandates denial of the proposed injunction.

**D. Plaintiff Cannot Demonstrate That Issuance Of The Injunction It Seeks Serves The Public Interest**

The public interest clearly favors Defendant and the public customers. Plaintiff's conclusory assertions to the contrary are not supported by a single fact and pointedly avoid any discussion of the public interest in being able to continue to do business with the brokers of their choice and in robust competition and flow of information in the securities industry.

Tellingly, Plaintiff's papers are completely silent regarding the rights of Defendant's clients. The injunction sought here, far from serving the public interest, plainly harms it. Such an injunction disserves the public interest in two critical respects. First, with respect to the clients served by Defendant, it deprives them of a valuable and trusted source of information and advice about their investments, risks and alternatives. Secondly, all of the clients at issue will be forced to rely upon strangers who do not know them or their accounts. Courts should zealously guard the public's right to preserve special relationships of trust and confidence that particular clients form with their professional advisors. In short, an injunction would essentially deprive innocent third parties -- the clients -- of their freedom and right to do business with the broker of their choice, their right to choose where and with whom to entrust their life savings, retirement funds, children's college accounts, etc. This would clearly and heavily disserve the public interest. This manifestly intolerable result in and of itself warrants denial of Plaintiff's application.

**Conclusion**

For the foregoing reasons, this Court should deny Plaintiff's motion for interim injunctive relief against Defendant and stay this action pending expedited arbitration before FINRA.

Dated: New York, New York
May 13, 2008

PADUANO & WEINTRAUB LLP

By: ______________________
Willard Knox (pro hac vice admission pending)
(wk@pwlawyers.com)
New York Bar No. 3947512
1251 Avenue of the Americas
Ninth Floor
New York, New York 10020
(212) 785-9100

HENDERSON & LYMAN
Robert Christie
(rchristie@henderson-lyman.com)
175 West Jackson Blvd.
Suite 240
Chicago, Illinois 60604
(312) 986-6960

Attorneys for Defendant
Donna Quam

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| AMERIPRISE FINANCIAL SERVICES, INC., Plaintiff, | ) | Civil No.: 08 C 50081 |
| vs. | ) | |
| DONNA QUAM, Defendant. | ) | |

FILED

MAY 14 2008

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**CERTIFICATE OF SERVICE**

I, Willard R. Knox, an attorney for defendant Donna Quam in the captioned action, hereby certify that on this 13th day of May, 2008, I caused a true and correct copy of the Affidavit of Donna Quam, sworn to May 13, 2008, the Declaration of Willard Knox, dated May 13, 2008, and Defendant's Memorandum of Law in Opposition to Plaintiff's Request for Injunctive Relief, dated May 13, 2008, to be served via electronic mail and Federal Express, postage prepaid, upon:

Eric D. Brandfonbrener, Esq.
(ebrand@perkinscoie.com)
Craig T. Boggs, Esq.
(cboggs@perkinscoie.com)
Perkins Coie LLP
131 South Dearborn Street, Suite 1700
Chicago, Illinois 60603-5559

Edward B. Magarian, Esq.
(Magarian.Edward@dorsey.com)
Alene R. Grossman, Esq.
(grossman.alene@dorsey.com)
Dorsey & Whitney LLP
50 South Sixth Street, Suite 1500
Minneapolis, Minnesota 55402-1498

Attorneys for Plaintiff
Ameriprise Financial Services, Inc.

Dated: New York, New York
May 13, 2008

PADUANO & WEINTRAUB LLP

By: [signature]
Willard Knox (pro hac vice admission pending)
(wk@pwlawyers.com)
New York Bar No. 3947512
1251 Avenue of the Americas
Ninth Floor
New York, New York 10020
(212) 785-9100

HENDERSON & LYMAN
Robert Christie
(rchristie@henderson-lyman.com)
175 West Jackson Blvd.
Suite 240
Chicago, Illinois 60604
(312) 986-6960

Attorneys for Defendant
Donna Quam